# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---------------------------------------------------

Hiis Farah, Hiisi Abdi, Aden Fithar,
Emily Nyakundi, Dayvid Wekesah,
Hassan Mohamud, and Mukhtar Abuakar,

                Plaintiffs,

v.

Alpha & Omega USA, Inc., d/b/a
Travelon Transportation, and
Viktor Cernatinskij,

                Defendants.

---------------------------------------------------

Civ. No. 16-996 (RHK/DTS)

**DEFENDANTS' MEMORANDUM
OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

## INTRODUCTION AND BACKGROUND

For over 20 years, Defendant Alpha & Omega USA, Inc., doing business as Travelon Transportation ("Travelon"), has provided "special transportation service," see Affidavit of Viktor  Cernatinskij ("Cernatinskij Aff.") ¶ 2, which Minn. Stat. § 174.29, subd. 1 defines as

> motor vehicle transportation provided on a regular basis by a public or private entity or person that is designed exclusively or primarily to serve individuals who are elderly or disabled and who are unable to use regular means of transportation but do not require ambulance service, as defined in section 144E.001, subdivision 3. Special transportation service includes but is not limited to service provided by specially equipped buses, vans, taxis, and volunteers driving private automobiles.

The Minnesota Department of Transportation ("MnDOT") regulates the transportation activities of providers of special transportation service. Minnesota law requires providers of special transportation service like Travelon to comply with

operating standards regarding driver qualifications and training requirements, appropriate vehicle safety equipment, inspection and maintenance of vehicles, and minimum insurance requirements. Minn. Stat. § 174.30, subd. 2. These operating standards are set forth in MnDOT's Administrative Rules, Parts 8840.5100 through 8840.6400 (Minn. R. 8840.5100 through Minn. R. 8840.6400).

Travelon provides special transportation service to medical assistance recipients, among other elderly and disabled individuals. Cernatinskij Aff. ¶ 2. The commissioner of the Minnesota Department of Human Services ("DHS") supervises the administration of medical assistance for eligible Minnesota recipients. Minn. Stat. § 256B.04, subd. 1. DHS has made administrative rules for its administration of medical assistance in accordance with its rulemaking authority. See id. at subd. 2. These rules include Minn. R. 9505.0315, which sets forth the eligibility requirements for medical assistance payment to a special transportation provider. Minn. R. 9505.0315, subps. 2 & 7. Item R(2) of Minn. R. 9505.0445 specifies the payment rates for special transportation and Minn. R. 9505.2175, subp. 4 describes the service records requirements imposed on special transportation providers.

In this lawsuit seven former drivers of Travelon, who Travelon classified as independent contractors, are suing Travelon for alleged violations of the minimum wage and overtime requirements of the Fair Labor Standards Act ("FLSA") and the Minnesota Fair Labor Standards Act ("MFLSA"), and for alleged violations of various wage-related

laws under chapter 181 of the Minnesota Statutes.[1] The drivers are also suing Defendant Viktor Cernatinskij ("Cernatinskij"), Travelon's majority owner and CEO, claiming that he is individually liable under the employment laws at issue.

Specifically, Plaintiffs assert four statutory claims in their Amended Complaint. In Count I, Plaintiffs claim that Defendants violated the FLSA, 29 U.S.C. § 201, *et seq.*, by (1) failing to pay Plaintiffs at least minimum wage for all hours worked and overtime compensation for all hours worked in excess of 40 hours per week; (2) failing to record, report, and preserve records of hours worked by Plaintiffs; and (3) misclassifying Plaintiffs as independent contractors. Amend. Compl. ¶¶ 174-175, 177.

In Count II, Plaintiffs claim that Defendants violated the MFLSA, Minn. Stat. §§ 177.21 – 177.35, by (1) failing to pay Plaintiffs at minimum wage for all hours worked and overtime compensation for all hours worked in excess of 48 hours per week; (2) failing to allow Plaintiffs adequate rest and meal breaks in accordance with Minn. Stat. §§ 177.253 and 177.254 and Minn. R. 5200.0120, subpart 4; (3) making improper deductions to Plaintiffs' wages, in violation of Minn. Stat. § 177.24, subd. 4; and (4)

---

[1] Plaintiffs are also suing Defendants for their alleged breach of an Independent Contractor Agreement ("ICA") that each Plaintiff signed with Travelon. In Count V of the Amended Complaint Plaintiffs claim: "Defendants breached the terms of the contracts when Defendants forced Plaintiffs to work more hours than the Plaintiffs wanted to work and instructed Plaintiffs to work on certain days. Defendants also breached the terms of the contracts when Defendants failed to pay the drivers for every invoice submitted to Defendants." Amend. Compl. ¶ 204. Each ICA contains an arbitration provision requiring the parties to submit a dispute arising under the ICA to arbitration. This Court granted Defendants' motion to stay Count V of the Amended Complaint pending resolution of Plaintiffs' statutory claims. [Doc. No. 22].

failing to maintain accurate time records of the hours worked by Plaintiffs. Id. at ¶¶ 181-184.

In Count III, Plaintiffs claim that Defendants violated Minn. Stat. § 181.79 by making improper deductions from Plaintiffs' wages. Id. at ¶ 190.

In Count IV, Plaintiffs claim that Defendants (1) violated Minn. Stat. § 181.032 by failing to state the total number of hours actually worked by Plaintiffs on their earnings statements; (2) violated Minn. Stat. § 181.03 by taking weekly fees for leases of the vehicles and tablets, dispatch fees, insurance, maintenance, gas and repairs, and deposits out of the money owed to Plaintiffs as weekly wages; and (3) violated Minn. Stat. § 181.101 by failing to pay Plaintiffs "all wages earned" at least once every 31 days. Id. at ¶ 197.

As to Plaintiffs' claims for unpaid overtime compensation and unpaid minimum wages and Plaintiffs' other claims alleging violations of the FLSA, the existence of an employer-employee relationship is a prerequisite to an FLSA claim. 29 U.S.C. § 203(d); see also 29 U.S.C. § 216(b) ("An action . . . may be maintained against any employer."). Likewise, the MFLSA applies to employees but not to independent contractors. See In re Kokesch, 411 N.W.2d 559, 561-562 (Minn. Ct. App. 1987). As to all of Plaintiffs' statutory claims, including those brought under the FLSA, the MFLSA, and chapter 181 of the Minnesota Statutes, Defendants have raised the defense that Plaintiffs cannot prove the existence of an employer-employee relationship, which is a prerequisite to each of Plaintiffs' statutory claims. Defendants claim the Plaintiffs were independent contractors.

4

But even if the Court determines that a genuine issue of material fact exists as to whether Plaintiffs were employees or independent contractors, Plaintiffs cannot survive summary judgment on their overtime pay claims because Plaintiffs have not presented sufficient evidence that Defendants had actual or constructive knowledge of the alleged overtime work. Plaintiffs' claims for unpaid overtime compensation, unpaid minimum wages, and for recovery of unlawful deductions under the MFLSA also fail as a matter of law because Plaintiffs have not presented sufficient evidence from which the Court can calculate Plaintiffs' alleged damages. Accordingly, Defendants now move for summary judgment on these claims.

**ARGUMENT**

**DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS FOR UNPAID OVERTIME COMPENSATION, UNPAID MINIMUM WAGES, AND RECOVERY OF UNLAWFUL DEDUCTIONS UNDER THE MFLSA.**

**I.      SUMMARY JUDGMENT STANDARD**

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505,

91 L. Ed. 2d 202 (1986). Thus, "the substantive law will identify which facts are material." Id. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. Id.

An issue of material fact is genuine if it has a real basis in the record, Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." Woods v. DaimlerChrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005) (quoting Anderson, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," Anderson, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." Hartnagel, 953 F.2d at 395 (citing Celotex, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. Mosley v. City of Northwoods, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it

6

relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. <u>Celotex</u>, 477 U.S. at 322.

In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. <u>Anderson</u>, 477 U.S. at 255. However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" <u>Celotex</u>, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." <u>Ricci v. DeStefano</u>, 129 S. Ct. 2658, 2677 (2009).

## II. PLAINTIFFS HAVE NOT DEMONSTRATED THE EXISTENCE OF SPECIFIC FACTS IN THE RECORD THAT SHOW DEFENDANTS WERE AWARE THAT ANY PARTICULAR PLAINTIFF WAS WORKING MORE THAN 40 HOURS IN ANY PARTICULAR WORKWEEK.

As mentioned above, the existence of an employer-employee relationship is a prerequisite to a claim for unpaid overtime compensation under both the FLSA and the MFLSA. 29 U.S.C. § 203(d) (FLSA); <u>see also</u> 29 U.S.C. § 216(b) ("An action . . . may be maintained against any employer."); <u>see</u> <u>In re Kokesch</u>, 411 N.W.2d 559, 561-562 (Minn. Ct. App. 1987) (involving MFLSA claim). In defense of Plaintiffs' FLSA and MFLSA claims Defendants in part argue that Plaintiffs cannot prove the existence of an employer-

7

employee relationship under the "economic realities" test, which is the test used by the Eighth Circuit to determine whether an individual is an employee under the FLSA. See Ash v. Anderson Merchandisers, LLC, 799 F.3d 957, 961 (8th Cir. 2015).

But even if Plaintiffs can prove they were employees of Travelon and not independent contractors, and that they worked overtime hours, Plaintiffs have not presented sufficient evidence that Defendants were aware that any or all of the Plaintiffs were working the overtime hours Plaintiffs now claim. Therefore, Plaintiffs' overtime pay claims fail as a matter of law. "[I]f an employer has no actual or constructive knowledge of overtime work and the employee fails to notify the employer or deliberately prevents the employer from learning of the overtime work, no violation has occurred." Brennan v. Qwest Comm'ns Int'l, Inc., 727 F. Supp. 2d 751, 755 (D. Minn. 2010) (citation omitted). A court "need only inquire whether the circumstances . . . were such that the employer either had knowledge [of overtime hours being worked] or else had the opportunity through reasonable diligence to acquire knowledge." Reich v. Dep't of Conservation & Natural Res., 28 F.3d 1076, 1082 (11th Cir. 1994) (alterations in original) (citations and internal quotation marks omitted), cited with approval by Reich v. Stewart, 121 F.3d 400, 407 (8th Cir. 1997). "[I]n order to prevail on [FLSA] overtime claims, Plaintiffs [are] required to present evidence that they worked above their scheduled hours without compensation and that [Defendants] knew or should have known that they were working overtime." Hertz v. Woodbury Cty., 566 F.3d 775, 781 (8th Cir. 2009).

Defendants did not have actual knowledge of the overtime hours allegedly being worked by Plaintiffs. Cernatinskij Aff. ¶ 3. None of the Plaintiffs notified Defendants that he or she had ever worked more than 40 hours in any particular workweek. Id. Defendants did not track Plaintiffs' work hours. Id. The number of hours a particular Plaintiff worked during a particular workday or a particular workweek was of no relevance to Defendants. Id. Plaintiffs were not paid by the hour. Id. Plaintiffs were paid on a by-the-job basis. Id. Each Plaintiff was paid a commission of 100 percent of the total amount paid by the customer to Travelon for each trip performed by that Plaintiff. Id.

Each trip performed by a Plaintiff was recorded by that Plaintiff on a written "Daily Trip/Log Sheet"[2] which contained the original customers' signatures as proof of the transportation provided. Id. at ¶ 4. Plaintiffs recorded the actual customer pick up times and destination arrival times on the Daily Trip/Log Sheets. Id. Plaintiffs were to submit the original Daily Trip/Log Sheets to Travelon on a weekly basis and to keep copies for their own records. Id. What Plaintiffs did with their time between the trips they provided to Travelon's customers was of no consequence to Defendants. Id. Plaintiffs were free to use this time effectively for their own purposes and without any restrictions imposed by Travelon. Id.

The obligation on the part of Plaintiffs to complete and submit the Daily Trip/Log Sheets to Travelon was not an obligation created by Defendants. Id. at ¶ 5. DHS and the private insurance carriers, such as Medica, Blue Cross Blue Shield, and UCare, from

---

[2] An example of a Daily Trip/Log Sheet is attached as Exhibit 1 to the Affidavit of Viktor Cernatinskij.

whom Travelon was compensated for providing special transportation service required this trip sheet documentation as proof that Travelon actually provided the service for which it billed. Id. Travelon is required to keep this trip sheet documentation for at least ten years in case of an audit by DHS or a private insurance carrier. Id. Travelon also occasionally refers to the Daily Trip/Log Sheets for billing purposes. Id.

Plaintiffs were asked in an interrogatory to state the number of hours each Plaintiff actually worked during each workweek he or she performed work for Travelon and to describe all facts indicating that Defendants knew how many hours that Plaintiff worked during the workweek. As to Defendants' alleged knowledge of the number of hours worked by each Plaintiff during each workweek, Plaintiffs answered that each Plaintiff "submitted travel logs to Defendants for each week worked and those travel logs detailed the time each trip took and, from those travel logs, Defendants would have known the number of hours worked." See Plaintiffs' Answer to Interrogatory No. 1(b) of Plaintiffs' Second Supplemental Answers to Defendants' First Set of Interrogatories, attached as Exhibit A to the Declaration of Michael J. Minenko.[3] The travel logs to which Plaintiffs refer are the Daily Trip/Log Sheets described above.

But these Daily Trip/Log Sheets did not afford Defendants the opportunity through reasonable diligence to acquire knowledge of overtime hours allegedly being worked by Plaintiffs. Even if the Daily Trip/Log Sheets somehow indicated that Plaintiffs were working overtime, they did not serve as constructive knowledge of overtime work.

---

[3] Plaintiffs' Second Supplemental Answers to Defendants' First Set of Interrogatories are not signed under oath by any of the Plaintiffs, as required by Fed. R. Civ. P. 33(b)(3) and (5).

This case is like <u>Hertz v. Woodbury Cty.</u>, 566 F.3d 775 (8th Cir. 2009), where the Eighth Circuit held that "[a]ccess to records indicating that employees were working overtime . . . is not necessarily sufficient to establish constructive knowledge." <u>Id.</u> at 781-82. The Eighth Circuit noted: "The FLSA's standard for constructive knowledge in the overtime context is whether [the defendant] 'should have known,' not whether it could have known." (citing <u>Stewart</u>, 121 F.3d at 407).

In <u>Hertz</u>, police officers brought FLSA claims against Woodbury County for alleged unpaid overtime work. <u>Id.</u> at 777. A jury found in favor of Woodbury County, and the police officers appealed arguing that the district court erred in instructing the jury that the County had no legal duty to consult its Computer Aided Dispatch ("CAD") logs, because that prevented the police officers from establishing Woodbury County should have known they were working overtime. <u>Id.</u> at 779, 781. The Eighth Circuit affirmed the district court and held that the CAD logs, which "essentially amount[ed] to a daily report of officer activity and only are referenced to gain an overview of what types of emergencies occurred during a particular period, as opposed to the schedules of particular officers," were not sufficient to establish constructive knowledge. <u>Id.</u> at 782 (emphasis added).

Similarly, in the instant case, the Daily Trip/Log Sheets amounted to a daily report of driver activity and are only kept by Travelon to serve as proof of services provided in case Travelon is audited by DHS or the private insurance carriers, as opposed to the schedules of particular drivers. It would not be reasonable to require that Travelon weed through the Daily Trip/Log Sheets to determine whether or not its drivers were working

more than 40 hours in a particular workweek, particularly given the fact, as discussed below, that Defendants acted in good faith with reasonable grounds for believing that they complied with the FLSA and MFLSA when they classified the drivers as independent contractors.

Plaintiffs have not satisfied the knowledge element of their unpaid overtime claims under the FLSA and the MFLSA. Plaintiffs have presented no sufficient evidence showing that Defendants knew or should have known that Plaintiffs were working more than 40 hours in any particular workweek Therefore, Defendants are entitled to summary judgment on these overtime pay claims. See e.g., Blakes v Illinois Bell Telephone Company, 75 F. Supp. 3d 792, 811 (N.D. Ill. 2014) (granting the defendant summary judgment on the plaintiff's FLSA claim, noting that courts require more than speculative or vague evidence of actual or constructive knowledge of unpaid overtime to overcome a motion for summary judgment). If the nonmoving party relies on conclusory allegations, and fails to present evidence supporting a necessary element of a claim, then that claim cannot survive summary judgment. Beyer v. Firstar Bank, N.A., 447 F.3d 1106, 1108 (8th Cir. 2006).

## III. PLAINTIFFS HAVE NOT PRESENTED SUFFICIENT EVIDENCE FROM WHICH THE COURT CAN ASCERTAIN PLAINTIFFS' DAMAGES.

Evidence of damages is an essential element of Plaintiffs' FLSA claims, see 29 U.S.C. §§ 206(a)(1), 207(a)(1), and 216(b), and Plaintiffs' MFLSA claims. See Minn. Stat. § 177.27, subd. 8. Before damages can be awarded, there must be substantial evidence in the record to permit a factfinder to draw reasonable inferences and make a

fair and reasonable assessment of the amount of damages. Group Health Plan, Inc. v. Philip Morris USA, Inc., 344 F.3d 753, 757 (8th Cir. 2003). Defendants are entitled to summary judgment on Plaintiffs' claims for unpaid overtime compensation, unpaid minimum wages and recovery of unlawful deductions under the MFLSA because Plaintiffs have not presented sufficient evidence regarding the existence and amount of damages sought in connection with these claims.

Plaintiffs commenced this lawsuit in state court on March 28, 2016, and Defendants removed the action to this Court on April 15, 2016. In September 26, 2016, Plaintiffs served their Supplemental Rule 26 Disclosures. Defendants advised Plaintiffs that their initial disclosures were deficient in that they failed to provide "a computation of each category of damages claimed by" Plaintiffs. See Fed. R. Civ. P. 26(a)(1)(A)(iii). This Rule requires Plaintiffs to disclose and explain the calculation of the total dollar amounts for each of their four categories of claimed damages. See, City of Minneapolis v. Redflex Traffic Sys., Civil No. 10-CV-3312, 2013 U.S. Dist. LEXIS 92819, *49-50, 2013 WL 3322614 (D. Minn. Jan. 10, 2013) (Rau, J.) (stating that "[t]he City was required to disclose the calculation of its damages in its initial disclosures," and citing Fed. R. Civ. P. 26(a)(1)(A)(iii)). It was not until March 15, 2017 that Plaintiffs finally provided some detailed information regarding their damages calculations. See Plaintiffs' First and Second Supplemental Answers to Interrogatory No. 1 and Plaintiffs' First Supplemental Answers to Interrogatory Nos. 4, 5, 6, and 7 of Plaintiffs' Second Supplemental Answers to Defendants' First Set of Interrogatories. But this latest

information still falls short of what Plaintiffs must do to prove both the existence and amounts of their claimed damages.

### A. Plaintiffs fail to explain how they determined the number of overtime hours they allegedly worked in any specific workweek.

Whether an employer must pay an employee overtime is determined by each individual workweek. Under 29 C.F.R. § 778.104, each workweek stands alone such that an employee who works 30 hours one week and 50 hours the next would be entitled to overtime compensation the second week even though the average between the two weeks is 40 hours per week. Therefore, whether any FLSA violation actually occurred requires a fact-specific, workweek-by-workweek analysis.

In its interrogatory answers Plaintiffs stated the number of hours each Plaintiff allegedly worked during each workweek that Plaintiff performed work for Travelon. See Plaintiffs' First Supplemental Answer to Interrogatory No. 1(a) of Plaintiffs' Second Supplemental Answers to Defendants' First Set of Interrogatories. But Plaintiffs do not explain how they determined the number of hours each of them worked during each particular workweek. They only refer to Plaintiffs' travel logs and assert that "[f]rom these travel logs, the hours that each Defendant (sic) worked may be extrapolated." See id., Plaintiffs' First Supplemental Answer to Interrogatory No. 5. Plaintiffs, however, do not show their purported extrapolation.

Plaintiffs' purported evidence of number of hours worked in specific workweeks provides no details which would allow a jury to determine Plaintiffs worked beyond 40 hours in any specific week during which they performed services on behalf of Travelon.

Therefore, Plaintiffs have failed to come forward with "sufficient evidence to show the amount and extent of [overtime] work" which would allow a fact-finder to find overtime hours "as a matter of just and reasonable inference." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946).

**B. Plaintiffs incorrectly compute the unpaid overtime compensation they could recover if they were to prevail on their overtime pay claims.**

If Plaintiffs succeed in proving they were non-exempt employees of Travelon, and not independent contractors, and that there were specific weeks in which they worked in excess of 40 hours, then they would be entitled to overtime compensation at the rate of one and one-half times their "regular rate" of pay for each hour worked in excess of 40 hours during that particular workweek. 29 U.S.C. § 207(a)(1). Thus, determining each Plaintiff's regular rate of pay is critical to calculating the amount of overtime pay each Plaintiff would be owed. The employee's "regular rate" of pay is the "keystone" of the overtime compensation requirement. Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424, 65 S. Ct. 1242, 1244, 89 L. Ed. 1705 (1945). "On that depends the amount of overtime payments which are necessary to effectuate the statutory purposes. The proper determination of that rate is therefore of prime importance." Id. at 424, 65 S. Ct. at 1244-45.

**1. Plaintiffs incorrectly determine the regular rate of pay.**

29 U.S.C. § 207(e) defines "regular rate" to include all remuneration for employment paid to, or on behalf of, the employee, except for certain enumerated statutory exclusions. The "regular rate" to be used for overtime purposes is an hourly

rate. <u>See</u> 29 C.F.R. § 778.109. Thus, if an employee is paid on some basis other than an hourly rate (e.g. piece rate, salary, commission), which was the case with each Plaintiff in this lawsuit, the overtime compensation due must be computed on the basis of an hourly rate derived therefrom. <u>See</u> <u>id.</u> "The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." <u>Id.</u> The regular rate generally must be calculated workweek-by-workweek. <u>Id.</u>, § 778.103 & 778.104.

Here, each Plaintiff was paid on a commission-only basis and the amount of that commission was equal to 100 percent of the total amount paid by the customer for each trip performed by that Plaintiff. Cernatinskij Aff. ¶ 3. Commission payments are often deferred beyond the pay period in which they are earned. To compute any overtime compensation owed, it is generally necessary to apportion the commission back over the workweeks of the period during which the commission was earned. <u>Id.</u>, § 778.119. Once the employer has ascertained the amount of commission allocable to each workweek, the commission for that week is divided by the total number of hours worked in that week to get the regular hourly rate for that workweek. <u>Id.</u>, § 778.120.

In their interrogatory answers Plaintiffs described how they determined each Plaintiff's regular rate of pay: "Plaintiffs calculated their regular rate of pay by dividing the actual amount of money paid by Defendants to Plaintiffs by the actual number of weeks Defendants paid Plaintiffs. This number was then divided by 40 to determine the

regular rate." See Plaintiffs' First Supplemental Answer to Interrogatory No. 5 of Plaintiffs' Second Supplemental Answers to Defendants' First Set of Interrogatories.

Plaintiffs' calculation of their regular rate of pay is flawed in several respects: *First,* Plaintiffs fail to apportion the commission payments back over the specific workweeks during which these commissions were earned. *Second,* Plaintiffs divide the *total* amount of commissions paid to Plaintiffs during their tenure with Travelon by the actual number of weeks Travelon *paid* Plaintiffs, rather than by the number of weeks Plaintiffs worked for Travelon. *Third,* after erroneously calculating the amount of commissions attributable to each week worked by Plaintiffs, Plaintiffs divide this weekly commission amount by 40 hours, rather than by the number of hours actually worked in that workweek, to determine the regular rate for that particular workweek. *Fourth*, Plaintiffs apply one single average regular rate amount throughout their overtime pay determination, rather than calculating the regular rate workweek-by-workweek. Each Plaintiff has completely failed to properly calculate his or her regular rate of pay, which is the "keystone" of the overtime compensation requirement. Walling, 325 U.S. 419, 424. Therefore, overtime compensation cannot be awarded.

### 2. Plaintiffs incorrectly multiply their regular rate of pay by 1.5 instead of 0.5 to determine the overtime rate of pay.

Once an employee's regular rate of pay is correctly determined, the appropriate multiplier must be applied to that regular rate to determine the overtime rate of pay. Here, since the weekly commissions paid to each Plaintiff have been allocated over all hours worked that particular workweek, including overtime hours, each Plaintiff would be

entitled to additional overtime compensation at *one-half* of the regular rate for each hour worked in excess of 40 hours during that particular workweek. <u>See</u> 29 C.F.R. § 778.118 and § 778.119. Plaintiffs were already compensated at the regular rate for their alleged overtime hours, so they would be entitled to a sum equivalent to one-half of their regular rate of pay for each overtime hour. Plaintiffs, however, incorrectly multiplied their regular rate number by 1.5 instead of 0.5 to determine the overtime rate of pay. <u>See</u> Plaintiffs' First Supplemental Answer to Interrogatory No. 5 of Plaintiffs' Second Supplemental Answers to Defendants' First Set of Interrogatories. Therefore, even if Plaintiffs had correctly determined their regular rates of pay, they have grossly overstated the amount of their overtime claims by applying the wrong multiplier to their regular rates.

### C. Plaintiffs incorrectly compute the unpaid wages they could recover if they were to prevail on their minimum wage claims.

Plaintiffs claim Defendants failed to pay Plaintiffs at least minimum wage for all hours worked. Amend. Compl. ¶¶ 174, 181. The FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce . . . or is employed in an enterprise engaged in commerce," a minimum wage. 29 U.S.C. § 206(a)(1). Thus, "to establish a violation of the minimum wage requirements of the FLSA, a plaintiff . . . must demonstrate that he was engaged in compensable activity within the meaning of the statute and that the wages received for that activity, if any, were below the statutory minimum wage." <u>Hensley v. MacMillan Bloedel Containers, Inc.</u>, 786 F.2d 353, 355 (8th Cir. 1986). "However, no violation occurs 'so long as the

total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement.'" Id. at 357 (quoting United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 490 (2d Cir. 1960)). In determining compliance with the minimum wage requirements of the Act, each workweek stands alone. Dove v. Coupe, 759 F.2d 167, 245 U.S. App. D.C. 147 (D.C. Cir. 1985).

### 1. Plaintiffs fail to allocate their commission payments among the workweeks in which these commissions were earned.

In their interrogatory answers, Plaintiffs identify the amounts of the commission payments they received and the dates on which they received these payments. However, Plaintiffs fail to allocate these commission payments over the specific workweeks in which the commissions were earned. See 29 C.F.R. §§ 778.119 and 120. One can determine from the Daily Trip/Log Sheets the trips on which Plaintiffs earned a commission and the specific weeks in which the trips occurred. Cernatinskij Aff. ¶ 6 and Exhibit 1. Therefore, it is possible to allocate the commission payments among the workweeks in which the commissions were earned. Even if such allocation is not possible or practicable, a reasonable and equitable method exists to ascertain a commission amount for each week in which each Plaintiff worked. From that weekly commission amount, one can determine each Plaintiff's hourly rate for each workweek by dividing the weekly commission amount by the total number of hours worked in that week. See id. § 778.120.

## 2. Plaintiffs fail to identify their hourly pay rates.

To proceed with their minimum wage claims Plaintiffs must identify their hourly pay rates so the Court can determine whether the commissions paid by Travelon met the minimum weekly requirements of the FLSA and the MFLSA. See Bailey v. Border Foods, Inc., Civ. No. 09-1230 (RHK/AJB), 2009 U.S. Dist. LEXIS 93378, 2009 WL 3248305, at *2 (D. Minn. Oct. 6, 2009) (dismissing FLSA minimum wage claim where plaintiffs did not identify their hourly pay rates, amount of reimbursements, and amounts expended in making deliveries, among other things); LePage v. Blue Cross & Blue Shield of Minn., Civ. No. 08-584 (RHK/JSM), 2008 U.S. Dist. LEXIS 49298, 2008 WL 2570815, at *2 (D. Minn. June 25, 2008) (dismissing FLSA minimum wage claim where plaintiffs failed to identify their hourly rates or any facts that would permit the Court to infer that they were actually paid less than the minimum wage required under the FLSA in any workweek). In their interrogatory answers, Plaintiffs provide bottom line total amounts for unpaid wages claimed by each Plaintiff under the FLSA, but Plaintiffs fail to explain how they calculated these totals. See Plaintiffs' First Supplemental Answer to Interrogatory No. 4 of Plaintiffs' Second Supplemental Answers to Defendants' First Set of Interrogatories. Specifically, Plaintiffs fail to (a) state the amount of the unpaid wages each Plaintiff is seeking for each workweek he or she performed work, (b) explain in detail Plaintiffs' calculation of such amount, and (c) specify each Plaintiff's hourly pay rate received over the course of each workweek at issue.

20

**D. Plaintiffs incorrectly compute the amounts for unlawful deductions which they seek to recover in connection with their claim that Defendants violated Minn. Stat. § 177.24, subd. 4.**

Plaintiffs claim that "Defendants further violated the MFLSA by making direct and indirect deductions to Plaintiffs' wages, such deductions reducing Plaintiffs' wages below minimum wage. Minn. Stat. § 177.24, subd. 4." Amend. Compl. ¶ 183. In their interrogatory answers Plaintiffs state: "For every week that Plaintiffs' pay fell below the minimum wage under the MFLSA, *see* Plaintiffs' First and Second Supplemental Answer to Interrogatory No. 1, *supra*, these deductions were unlawful and totaled $1,250." Plaintiffs' First Supplemental Answer to Interrogatory No. 6 of Plaintiffs' Second Supplemental Answers to Defendants' First Set of Interrogatories. Plaintiffs then state the alleged total unauthorized deductions amount for each Plaintiff. Id. But, as discussed above, Plaintiffs fail to specify each Plaintiff's hourly pay rate received over the course of each workweek at issue. Therefore, one cannot identify from Plaintiffs' proffered evidence which workweeks, if any, a particular Plaintiff's pay fell below the minimum wage required under the MFLSA. As a result, Plaintiffs have incorrectly computed the amounts for unlawful deductions which they seek to recover in connection with their claim that Defendants violated Minn. Stat. § 177.24, subd. 4.

Plaintiffs fail to present sufficient evidence or computation of damages, which is a requisite element of their claims under the FLSA and MFLSA for unpaid overtime compensation, unpaid minimum wages, and recovery of unauthorized deductions. Therefore, summary judgment for Defendants on these claims is appropriate.

**IV.   LIQUIDATED DAMAGES ARE NOT APPROPRIATE BECAUSE DEFENDANTS ACTED IN GOOD FAITH WITH REASONABLE GROUNDS FOR BELIEVING THAT THEY COMPLIED WITH THE FLSA AND MFLSA WHEN THEY CLASSIFIED PLAINTIFFS AS INDEPENDENT CONTRACTORS.**

For the reasons discussed above, Plaintiffs have not, as a matter of law, presented sufficient evidence of a violation of the FLSA's or MFLSA's overtime pay or minimum wage provisions. Even if Plaintiffs proved liability and damages with regard to these claims, liquidated damages would not be appropriate. The FLSA provides that an employer who violates the overtime pay or minimum wage provisions of the FLSA is ordinarily liable for the unpaid overtime compensation or unpaid minimum wages, as the case may be, and an equal amount as liquidated damages. 29 U.S.C. § 216(b). However, the FLSA also provides that

> if the employer shows to the satisfaction of the court that the act or omission giving rise to [the employee's] action [for unpaid overtime compensation or unpaid minimum wages] was in good faith and that [the employer] had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260. The employer's good faith is for the Court to decide. Longlois v. Stratasys, Inc., 88 F. Supp. 3d 1058, 1081 (D. Minn. 2015). Here, Defendants acted in good faith and had reasonable grounds for believing they were not violating the FLSA or the MFLSA when they classified Plaintiffs as independent contractors.

To avoid liability for liquidated damages, the employer has the "affirmative burden to show both subjective good faith and objective reasonable grounds for belief of compliance." Jarrett v. ERC Properties, Inc., 211 F.3d 1078, 1084 (8th Cir. 2000) (quoting

<u>McKee v. Bi-State Dev. Agency</u>, 801 F.2d 1014, 1020 (8th Cir. 1986)). To demonstrate good faith, employers must show an honest effort to discover and follow the FLSA's requirements. <u>Chao v. Barbeque Ventures, LLC</u>, 547 F.3d 938, 942 (8th Cir. 2008).

In the instant case, Defendants' efforts to discover and follow the FLSA's requirements included relying on the guidance and advice given by attorney Stephen Fishman in his book titled <u>Working with Independent Contractors</u>, (6th ed. September 2008) and (8th ed. July 2014). Cernatinskij Aff. ¶ 7. Defendants also consulted with Minnesota attorney Jeffrey H. Olson regarding the FLSA's requirements. <u>Id.</u>

The fact that Defendants had objective reasonable grounds for believing that they complied with the FLSA and the MFLSA when they classified Plaintiffs as independent contractors rather than employees is demonstrated by two recent decisions by an unemployment law judge with the Minnesota Department of Employment and Economic Development, copies of which are attached as Exhibits 2 and 3 to the Affidavit of Viktor Cernatinskij. <u>Id.</u> at ¶ 8. These two decisions arose from applications for Minnesota unemployment benefits submitted by two former Travelon drivers, Dow Yang and Dustin Helget. <u>Id.</u> Defendants treated Yang and Helget the same as Plaintiffs in all material respects in their respective relationships with Travelon. <u>Id.</u> Since unemployment benefits are available to eligible employees and not independent contractors, the threshold issue in the Yang and Helget appeals was the same: Whether an employment relationship existed between Yang/Helget and Alpha & Omega USA, Inc. <u>Id.</u>, Exhs. 2 and 3.

Following extensive evidentiary hearings in August and September of 2016 in which the drivers and Cernatinskij testified, the unemployment law judge decided in both

cases that the driver was an independent contractor with Alpha & Omega USA, Inc. and was not an employee in covered employment under the Minnesota Unemployment Insurance Law. Id. In the Yang appeal the unemployment law judge's reasons for her decision included the following:

> Minnesota Statutes, section 268.035, subdivision 15, states that employment means service performed by an individual who is considered an employee under the common law of employer-employee and not considered an independent contractor.

> Minnesota Rules 3315.0555 states that when determining whether an individual is an employee or an independent contractor, five essential factors must be considered and weighed within a particular set of circumstances. Of the five factors, the two that are the most important are those that indicate the right or the lack of a right to control the means and manner of performance and the right to discharge a worker without incurring liability. Other essential factors to be considered are the mode of payment, furnishing of materials and tools, and control over the premises where the services are performed. Other factors, including some not specifically identified in this part, may be considered if a determination is inconclusive when applying the essential factors, and the degree of their importance may vary depending upon the occupation or work situation being considered and why the factor is present in the particular situation.

> The preponderance of the evidence shows that Yang was an independent contractor with Travelon, rather than an employee.

> * * * *

> Nonetheless, a preponderance of the evidence shows that Travelon did not have the right to control the means and manner of Yang's performance. Based on Travelon's witnesses' more credible testimony, Yang determined his own schedule, and when he would take time off. If Travelon received a complaint from a customer about Yang, Travelon would forward the complaint to Yang, and Yang was required to promptly resolve the complaint with the customer. Dispatch assigned Yang the trips he was being paid to perform, but at Yang's expense. The majority of the restraints placed on Yang's work were legally mandated, and did not originate from Travelon. Yang was required to

24

undergo extensive training before he started driving for Travelon, but this training was legally mandated, and Yang paid for it. Yang could have hired assistants to help him with the work (which likely would not have been financially viable), but, he could not have permitted any other individuals to drive the van that he leased unless they received the required training and legal authorization to drive the vehicle. Yang generally had the right to control the means and manner of his performance, on a day-to-day basis. The greater weight of the factors suggests an independent contractor relationship and not an employment relationship.

<u>Findings of Fact and Decision</u> by Unemployment Law Judge Megan Flynn, dated January 3, 2017, pp. 6-7. <u>Id.</u>

Defendants respectfully request that the Court now decide that Defendants acted in good faith with objective reasonable grounds for believing that they complied with the FLSA and MFLSA when they classified Plaintiffs as independent contractors, and that therefore Plaintiffs are not entitled to liquidated damages in connection with their claims for unpaid overtime compensation and unpaid minimum wages.

## CONCLUSION

Plaintiffs fail to raise a genuine issue of material fact for trial as to necessary elements of their claims for unpaid overtime compensation, unpaid minimum wages, and recovery of unlawful deductions under the MFLSA. Therefore, Defendants respectfully request the Court to grant their motion for summary judgment on each of these claims, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Dated: October 5, 2017               <u>s/Michael J. Minenko</u>
Michael J. Minenko
Bar Number 129872
**Attorney for Defendants Alpha & Omega USA, Inc., d/b/a Travelon Transportation, and Viktor Cernatinskij**
Minenko & Hoff, P.A.
5200 Willson Road, Suite 150
Edina, MN 55424
Telephone: (952) 922-6766
Fax: (952) 928-8370

Attorney's E-mail Address:
  mike@minenkohoff.com